# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### March 4, 2014 Session

## STATE OF TENNESSEE v. MICHAEL SMITH

**Appeal from the Criminal Court for Shelby County**
**No. 10-06590    James M. Lammey, Jr., Judge**

_____

**No. W2013-01190-CCA-R3-CD  - Filed August 13, 2014**

_____

A Shelby County jury found the Defendant, Michael Smith, guilty of aggravated assault and evading arrest.  The trial court sentenced the Defendant to ten years for the aggravated assault conviction and eleven months and twenty-nine days for the evading arrest conviction. The trial court ordered the sentences to run consecutively.  The Defendant asserts that: (1) the trial court committed plain error by failing to compel an election in count one; (2) the indictment for aggravated assault fails to state an offense; (3) the trial court improperly allowed the victim to testify about the Defendant's prior bad acts; (4) the trial court improperly denied the Defendant's request for a mistrial after the State explored the Defendant's conviction and defense in an unrelated case; (5) the trial court committed plain error when it failed to compel the State to provide the trial court an audio recording of the victim's statement; (6) the trial court improperly instructed the jury on flight; (7) the trial court improperly ruled that the Defendant's prior convictions could be used for impeachment purposes should he testify at trial; (8) the evidence is insufficient to sustain his conviction for evading arrest; (9) the trial court abused its discretion when it denied the Defendant's request to sit at counsel table; and (10) his sentence is excessive.  After a thorough review of the record and the applicable law, we affirm the trial court's judgments.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

Lance R. Chism  Memphis, Tennessee (on appeal) and Randall Rhea  Memphis, Tennessee (at trial) for the appellant, Michael Smith.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Paul Goodman, Assistant District

Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Facts

This case arises from the Defendant's pursuit of the victim on July 20 and 21, 2010, in violation of an order of protection protecting the victim from the Defendant. As a result, a Shelby County grand jury indicted the Defendant for aggravated assault for violating the order of protection, evading arrest, and resisting official detention.

At a trial on these charges, the parties presented the following evidence: Jonathan Gross, a Memphis Police Department officer, testified that he reported to a residential address on Somerset in Memphis, Tennessee, during the early morning hours of July 21, 2010. When he arrived, he observed a white male in the back yard of a house attempting to run through brush and "jump down onto North Parkway." Officer Gross said that police officers were already on the scene and ordering the Defendant to stop. The Defendant fled from the officers, running "back northbound through the brush" and "towards Somerset from North Parkway." Officer Gross returned to his squad car and drove toward the area where he saw the Defendant fleeing. By the time Officer Gross located the Defendant, the Defendant was already in police custody. Officer Gross noted that the Defendant's legs were cut, the result of what he assumed was the Defendant's flight through the brush. Officer Gross estimated that more than six officers participated in apprehending the Defendant and that the total pursuit of the Defendant lasted approximately ten minutes.

Andrew Bishop, a Memphis Police Department officer, testified that, on July 21, 2010, he responded to a request for back-up officers needed to set up a perimeter due to a fleeing suspect who was thought to be involved in a domestic disturbance. He described the location of the scene as "at Somerset near Watkins." Officer Bishop said that he was positioned on the upper portion of a ramp that goes over North Parkway. From this position, he observed the Defendant running from police "inside the thicket." Officer Bishop said that the Defendant was approximately twenty-five yards from the residence where the complaint originated on Somerset. When the Defendant saw Officer Bishop and several other officers, he stopped running and "started to double back." Officer Bishop said that the officers creating the perimeter started to move in to close the circle and apprehend the Defendant. The Defendant broke through the perimeter and fled through a neighborhood area. Over the police radio, Officer Bishop learned that the Defendant had "doubled back" and was again headed toward him and Officer Gerard. Officer Bishop said that Officer Gerard grabbed the Defendant, who attempted to "spin away" from the officer. Officer Gerard wrestled the

2

Defendant to the ground, and Officer Bishop assisted in taking the Defendant into custody.

Officer Bishop recalled that after the Defendant was apprehended he complained of chest pain and was transported to a hospital for treatment. Officer Bishop estimated that the "foot chase" lasted approximately five to ten minutes.

Kimberly Chrestman, the victim, testified that she began dating the Defendant in 2008 and that she could not recall when the relationship ended. The victim recalled the events that led up to the Defendant's arrest on July 21, 2010, saying that, on July 20, 2010, she was at home in Olive Branch, Mississippi, where she lived with the Defendant. She said that she planned to go to her mother's house to bake a cake. The Defendant, however, did not want the victim to leave the house. The victim described the Defendant as "controll[ing] ever[y] aspect of everything [she] did." She and the Defendant argued over her going to her mother's house. She said that the Defendant "smash[ed]" her against the door to prevent her exit and took her car keys. During their physical altercation, the Defendant kicked a bucket of paint over in the kitchen. The Defendant eventually agreed to drive the victim, in her car, to her mother's house. The victim recalled that the Defendant told her she could not drive because she had "lost [her] privileges."

The victim testified that, when she was ready to leave her mother's house that night, she did not want to return to the Defendant, so she asked a friend for a ride to another friend's house in Midtown in Memphis, Tennessee. The victim said that she, her friend Shannon, a friend of Shannon's, and Shannon's parents were all at the house in Midtown. She recalled being in the "computer room" when she heard "rocks crunching" in the flower bed outside. She stated that she knew that it was the Defendant because he had "stalked" her before. She said that, upon hearing the noise, she was "[t]errified," but her friends told her not to "be paranoid" because "no one" knew she was at the house.

The victim walked over to the window in the room and opened the blinds and saw the Defendant looking back at her. In response, the victim screamed and "freaked completely out." She said that she called the police and remained inside the house until she believed the Defendant had left. A friend of Shannon's then drove the victim to "Paul's house" on Somerset because the victim was certain the Defendant would return. At "Paul's house" the victim began to relay to Paul what had occurred. As she spoke, she noticed movement out of the corner of her eye and looked up at a window in the front door of the home and saw the Defendant. The victim stated that she felt "terrified" and described the experience as "a walking nightmare." She again called the police seeking help. Soon after she had placed the call she heard "tires screeching" in the driveway, and the Defendant fled. The victim said that "tons" of police pursued the Defendant and ultimately apprehended him that day.

3

On cross-examination, the victim testified that she did not recall the times of these events. She said she went to her mother's on the night of July 20, 2010, and then on to Shannon's house that same night. It was early on the following morning, July 21, 2010, that she went to Paul's house on Somerset. She agreed that the police never came to Shannon's house although she had called the police for help. The victim denied any knowledge of a restraining order protecting her from the Defendant in July 2010. She further denied ever telling Mr. Bailey, who represented the Defendant at one point, that she had called the police alleging that the Defendant had assaulted her so that the police would take the Defendant away so that she could use drugs.

The victim testified that she did not recall pleading guilty to passing bad checks in 2003, but deferred to the document upon which defense counsel was relying in reference to her criminal history. The victim agreed that she had pled guilty to theft under $500 on October 24, 2006. The victim agreed that she went to see the Defendant in jail on October 5, 2010. She explained that she went to see the Defendant in jail to retrieve the keys to a Chevy Blazer.

The State then read the following stipulation into the record:

It is hereby stipulated and agreed to by the parties herein that the following may be taken by the jury as a fact without necessity for further proof:

No. 1, on May the 6th, 2009, in the General Sessions Court of Shelby County, Tennessee, in Case No. 09-117250, Judicial Commissioner Ronald Johnson of the General Sessions Court, a court of competent jurisdiction issued a written order to Defendant Michael Smith which read as follows:

[The Defendant] is, by this order, enjoined or restrained from threatening to commit, attempting to commit, or committing the following specified offenses against the victim, Kimberly Chrestman:

To-wit, domestic assault as prohibited by TCA - that's Tennessee Code Annotated - Section 39-13-111.

Assault as prohibited by TCA Section 39-13-101.

Vandalism as prohibited by TCA Section 39-14-408.

False imprisonment as prohibited by TCA Section 39-13-302.

4

Stalking as prohibited by TCA Section 39-17-315.

Harassment as prohibited by TCA Section 39-17-308.

Or violation of an order of protection or restraining order as prohibited by TCA section 36-3-610 and 36-3-612

No. 2, this order remained in effect as of July the 21st, 2010.

No. 3, the [D]efendant signed the order on May 6th, 2009, on receipt.

The State announced the close of its case in chief, and the defense presented the following evidence: The victim testified that she did not recall whether she told police that the Defendant had threatened her. The victim agreed that she spoke with Candy Barron "all the time" by telephone.

Javier Michael Bailey, Sr., testified that he represented the Defendant on this case in general sessions court. He agreed that he met with the victim "numerous times," some of which were at court hearings. Mr. Bailey stated that the victim accompanied the Defendant to his court dates. He said that the victim did not appear to be "fearful" of the Defendant. Additionally, the victim met with Mr. Bailey at his office "[c]ountless times." Mr. Bailey said that on some occasions the victim's mother accompanied her and, on other occasions, the victim came to his office alone. During one of these meetings, the victim told Mr. Bailey that the Defendant did not threaten or assault her. Mr. Bailey said that the victim did not attend the preliminary hearing in this case.

Mr. Bailey testified that he represented the Defendant on a separate matter involving the same victim that predated the instant offense. Mr. Bailey said the defense theory in that case was that the Defendant was trying to prevent the victim from using cocaine.

Candy Barron testified that she was acquainted with both the Defendant and the victim. She said that she was aware of a dispute between the parties over the house in Olive Branch, Mississippi. Ms. Barron recalled a conversation during which the victim told Ms. Barron that she "wasn't worried about [the Defendant's] mother having a quit claim on the house for nineteen more years, and [the Defendant would] be locked up for nineteen more years."

On cross-examination, Ms. Barron testified that the Defendant owned a six-unit rental property located on North Parkway. She confirmed that she was the property manager for

5

the units.

After hearing the evidence, the jury convicted the Defendant of aggravated assault and evading arrest. The jury acquitted the Defendant of resisting official detention. At a subsequent sentencing hearing, the trial court sentenced the Defendant to serve ten years for the aggravated assault conviction and eleven months and twenty-nine days for the evading arrest conviction. The trial court ordered the sentences to run consecutively to one another for an effective sentence of ten years, eleven months, and twenty-nine days.

## II. Analysis

The Defendant asserts that: (1) the trial court committed plain error by failing to compel an election in count one; (2) the indictment for aggravated assault fails to state an offense; (3) the trial court improperly allowed the victim to testify about the Defendant's prior bad acts; (4) the trial court improperly denied the Defendant's request for a mistrial after the State explored the Defendant's conviction and defense in an unrelated case; (5) the trial court committed plain error when it failed to compel the State to provide the trial court with an audio recording of the victim's statement; (6) the trial court improperly instructed the jury on flight; (7) the trial court improperly ruled that the Defendant's prior convictions could be used for impeachment purposes should he testify at trial; (8) the evidence is insufficient to sustain his conviction for evading arrest; (9) the trial court abused its discretion when it denied the Defendant's request to sit at counsel table; and (10) his sentence is excessive because the trial court improperly found him to be a dangerous offender.

## A. Election of Offenses

The Defendant asserts that the trial court erred by failing to compel an election in count one, aggravated assault, of the indictment. The Defendant concedes that this issue was not raised at trial or in any of the motions for new trial and requests that this Court conduct plain error review of this issue. The State responds that the Defendant has failed to establish that one of his substantial rights was adversely affected or that consideration of any error is necessary to do substantial justice. We agree with the State.

In Tennessee, "no issue presented for review shall be predicated upon error in the admission or exclusion of evidence . . . unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived . . . ." Tenn. R. App. P. 3(e); *State v. Hatcher*, 310 S.W.3d 788, 808 (Tenn. 2010); *State v. Keel*, 882 S.W.2d 410, 416 (Tenn. Crim. App. 1994). This Court may, however, review an issue which would ordinarily be considered waived if the Court finds plain error in the record. *See* Tenn. R. App. P. 36(b).

6

The doctrine of plain error provides that "[w]hen necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal." Tenn. R. App. P. 36(b).

This Court will grant plain error review only when: "(1) the record clearly establishes what occurred in the trial court; (2) the error breached a clear and unequivocal rule of law; (3) the error adversely affected a substantial right of the complaining party; (4) the error was not waived for tactical purposes; and (5) substantial justice is at stake; that is, the error was so significant that it 'probably changed the outcome of the trial.'" *Hatcher*, 310 S.W.3d at 808 (citing *State v. Smith*, 24 S.W.3d 274, 282-83 (Tenn. 2000) (quoting *State v. Adkisson*, 899 S.W.2d 626, 642 (Tenn. Crim. App. 1994)). "If any of these five criteria are not met, we will not grant relief, and complete consideration of all five factors is not necessary when it is clear from the record that at least one of the factors cannot be established." *Id.* (citation omitted). We need not consider all five factors when the record clearly establishes that at least one of the factors is not met. *Hatcher*, 310 S.W.3d at 808. It is the defendant's burden to persuade this Court that plain error exists and that the error "was of sufficient magnitude that it probably changed the outcome of the trial." *State v. Hester*, 324 S.W.3d 788, 808 (Tenn. 2010).

The doctrine of election of offenses requires that when there is evidence at trial that a defendant has committed multiple offenses against a victim, the State must elect the facts upon which it is relying to establish each charged offense. *State v. Johnson*, 53 S.W.3d 628, 630 (Tenn. 2001) (citations omitted). Thus, when the State presents evidence showing that more than one offense occurred, but the indictment is not specific as to which offense the defendant is being tried for, it is the responsibility of the trial court to require the State to elect which offense is being submitted to the jury. *State v. Lemacks*, 996 S.W.2d 166, 170 (Tenn. 1999); *see also State v. Brown*, 823 S.W.2d 576, 583 (Tenn. Crim. App. 1991). The Defendant's right to a unanimous jury verdict on each and every count is "fundamental, immediately touching the constitutional rights of the accused." *State v. Burlison*, 501 S.W.2d 801, 804 (Tenn. 1973).

This Court has previously determined that a trial court's failure to properly instruct the jury about the State's election may be harmless "where the prosecutor provides during closing argument an effective substitute for the missing instruction." *State v. William Darryn Busby*, No. M2004-00925-CCA-R3-CD, 2005 WL 711904, at *6 (Tenn. Crim. App., at Nashville, Mar. 29, 2005), *perm. app. denied* (Tenn. Aug. 25, 2008) (citing *State v. James Arthur Kimbrell*, No. M2000-02925-CCA-R3-CD, 2003 WL 1877094, at *23 (Tenn. Crim. App., at Nashville, Apr. 15, 2003), *no Tenn. R. App. P. 11 application filed*; *State v. Michael J. McCann*, No. M2000-2990-CCA-R3-CD, 2001 WL 1246383, at *5 (Tenn. Crim. App.,

at Nashville, Oct. 17, 2001), *perm. app. denied* (Tenn. Apr. 1, 2002); *State v. William Dearry*, No. 03C01-9612-CC-00462, 1998 WL 47946, at *13 (Tenn. Crim. App., at Knoxville, Feb. 6, 1998), *perm. app. denied* (Tenn. Jan. 19, 1999)).

The indictment in this case alleged that on July 21, 2010, the Defendant committed aggravated assault against the victim in Shelby County, Tennessee. The evidence at trial showed an altercation between the victim and the Defendant in Olive Branch, Mississippi on July 20, 2010, and an incident on that same date at a residence on Watkins in Memphis, Shelby County, Tennessee. The final incident occurred early on the morning of July 21, 2010, at a Somerset address in Memphis, Shelby County, Tennessee. During closing argument the prosecutor told the jury that it could not consider the events occurring in Olive Branch, Mississippi. As to the second incident at Watkins Street, the prosecutor stated, "There was no proof that the [D]efendant was at the house on Watkins," directing the jury to consider the final and third incident on Somerset Avenue.

In our view, the indictment clearly identifies the incident for which the Defendant was charged and convicted. The proof at trial did show several incidents leading up to the charged offense, however, the State identified and directed the jury to consider the incident at the house located on Somerset as the basis for the Defendant's aggravated assault charge. Based upon the indictment and the State's closing argument, the Defendant's right to a unanimous jury verdict was not violated.

Accordingly, the Defendant has not shown that a substantial right was adversely affected warranting plain error review. The Defendant is not entitled to relief as to this issue.

## B. Aggravated Assault Indictment

The Defendant argues that the indictment failed to state an offense because the indictment charged him with "threaten[ing]" to commit assault against the victim, rather than "attempt[ing]" to commit assault pursuant to Tennessee Code Annotated section 39-13-102(c) (2010). The State responds that the language of the indictment sufficiently charged the Defendant with aggravated assault. We agree with the State.

An indictment must meet the statutory requirements of Tennessee Code Annotated section 40-13-202, which provides:

> The indictment must state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what is intended, and with that

degree of certainty, which will enable the court, on conviction, to pronounce the proper judgment; and in no case are such words as "force and arms" or "contrary to the form of the statute" necessary.

In the case under submission, the relevant portion of the indictment at issue reads as follows:

[T]hat [the Defendant] on July 21, 2010, in Shelby County, Tennessee, and before the finding of this indictment, did unlawfully and knowingly, after having been enjoined by an order of the General Sessions Criminal Court of Shelby County, Tennessee, a court of competent jurisdiction, from threatening to commit Domestic Assault or Assault against [the victim], threaten to commit Domestic Assault or Assault against [the victim], in violation of T.C.A. 39-13-102[.]

After a thorough review of the indictment in this case, we find that it is sufficient. The indictment in this case closely follows the statutory form of the crime, and the indictment is consistent with the requirements of Tennessee Code Annotated section 39-13-102. We note that our Supreme Court's decision in *State v. Hill*, 954 S.W.2d 725 (Tenn. 1997) supports this conclusion. In *Hill*, our Supreme Court held that, for constitutional purposes, "an indictment is valid if it provides sufficient information: (1) to enable the accused to know the accusation to which answer is required; (2) to furnish the court adequate basis for the entry of a proper judgment; and (3) to protect the accused from double jeopardy." *Hill*, 954 S.W.2d at 727. In *Hill*, the Court stressed that indictments should be scrutinized from the "enlightened standpoint of common sense and right reason rather than from the narrow standpoint of . . . technicality or hair splitting fault finding." *Id*. at 728 (quoting *United States v. Purvis*, 580 F.2d 853, 857 (5th Cir.1978)). Since *Hill*, the Court has often repeated its intention to relax "common law pleading requirements and its reluctance to elevate form over substance when evaluating the sufficiency of indictments." *See e.g., State v. Hammonds*, 30 S.W.3d 294, 300 (Tenn. 2000). In *Hammonds*, the Court said, "Indeed, *Hill* and its progeny leave little doubt that indictments which achieve the overriding purpose of notice to the accused will be considered sufficient to satisfy both constitutional and statutory requirements." *Id*.; *see State v. Sledge*, 15 S.W.3d 93, 94 (Tenn. 2000); *Crittenden v. State*, 978 S.W.2d 929, 931 (Tenn. 1998); *Ruff v. State*, 978 S.W.2d 95, 100 (Tenn. 1998).

Accordingly, we conclude the indictment provided the Petitioner adequate notice of the charges against him, and the trial court had an adequate basis for the entry of a proper judgment. Therefore, the Petitioner is not entitled to relief as to this issue.

### C. Victim's Testimony About the Defendant's Prior Bad Acts

9

The Defendant asks this Court to conduct a plain error review of the trial court's decision to allow the victim to testify about the Defendant's prior bad acts. The State responds that the Defendant fails to show the breach of a clear and unequivocal rule of law because the testimony was admissible to prove something other than the Defendant's propensity for the offense charged. We agree with the State.

"Admission of evidence is entrusted to the sound discretion of the trial court, and a trial court's ruling on evidence will be disturbed only upon a clear showing of abuse of discretion." *State v. Robinson*, 146 S.W.3d 469, 490 (Tenn. 2004). The Tennessee Rules of Evidence provide that all "relevant evidence is admissible," unless excluded by other evidentiary rules or applicable authority. Tenn. Rule Evid. 402. Of course, "[e]vidence which is not relevant is not admissible." *Id*. Relevant evidence is defined as evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. Rule Evid. 401. Even relevant evidence, however, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. Rule Evid. at 403.

Evidence of other crimes, wrongs, or bad acts is not admissible to prove the character of a person to show action in conformity with that character. *Id*. at 404(b). Such evidence may be admissible, however, for "other purposes." *Id*. Our Supreme Court has determined that such "other purposes" include demonstrating motive or intent. *State v. Berry*, 141 S.W.3d 549, 582 (Tenn. 2004). Such evidence is admissible for other purposes, provided that the trial court: (1) upon request, holds a hearing outside the jury's presence; (2) determines that a material issue exists other than conduct conforming with a character trait and, upon request, states the basis for its determination; (3) finds proof of the other crime, wrong, or act to be clear and convincing; and (4) determines that the probative value of the evidence is not outweighed by the danger of unfair prejudice. Tenn. Rule Evid. 404(b). The safeguards in Rule 404(b) ensure that defendants are not convicted for charged offenses based on evidence of prior crimes, wrongs, or acts. *State v. James*, 81 S.W.3d 751, 758 (Tenn. 2002). When a trial court substantially complies with the procedural requirements of Rule 404(b), the standard of appellate review of the trial court's decision is abuse of discretion. *See State v. Powers*, 101 S.W.3d 383, 395 (Tenn. 2003); *James*, 81 S.W.3d at 759. If the strict requirements of the rule are not substantially observed, the reviewing court gives the trial court's decision no deference. *State v. DuBose*, 953 S.W.2d 649, 652 (Tenn. 1997).

The Defendant identifies the following portions of the victim's testimony as a basis for this issue:

[The victim]: I wanted to go to my mother's and make this cake because I didn't have any baking pans or anything there. And so he does not want me to leave the house by myself and go anywhere. I mean, he - -

[The State]: Who doesn't want you to leave?

[The victim]: [The Defendant]. *He controlled ever[y] aspect of everything I did.*

. . .

[The victim]: He would not let me drive. This was my truck in my name - my vehicle. And he would not - he had the keys telling me that I lost my privileges; I could not leave the house or anything. *So, you know, he restrains me, physically, from going anywhere. And that's what he would do -*

[The State]: He restrained you from leaving that home?

[The victim]: Yes.

[The State]: Were there any threats made by the [D]efendant to you?

[The victim]: *Yes, but I already went through a life - I mean all these years worth of threats and what he does.*

. . . .

[The State]: So, you said there was - at some point, you left that address - what caused you to leave that address?

[The victim]: *Well, from - because he had stalked me before, I know what it sounds like when he comes up to a window.*

. . . .

[The State]: Were [your friends at the house on Watkins] aware that you had a relationship with [the Defendant]?

11

[The victim]:          *Yes.  And everyone is aware of what he has done to me.*

. . . .

[The victim]:          So, after we thought he had gone and maybe the police had chased him off or whatever; I'm just - *I know he's going to come back because he's done that to me before. He will wait until the police leaves, and he comes back.*

. . . .

[The victim]:          *[Y]ou don't understand how terrified I stayed because of him.  I mean, this is a walking nightmare.*

. . . .

[The State]:           Do you remember any of the specific threats the [D]efendant made when you said he threatened you?

[The victim]:          At the - at the house?

[The State]:           Any threats made -

[The victim]:          I don't remember exactly any threats made; but, *I mean, this happened all the time.  Everything starts to blend in together when you've been through this for that many years with a person.*

[The State]:           When you wanted to leave the address on Stevenson to go visit your mother, what was done? - was anything done to you at that point?

[The victim]:          Yes. He was smashing me into the door where I couldn't get out.  He took my keys.  We kicked over - during this tussle, him trying to not let me go out the door, he kicked a bucket of paint over on our kitchen floor.  I mean, it was just - this wasn't just - (indiscernible), but *he has been keeping me captive like this forever.*

(Emphasis added.)

12

The Defendant concedes that he did not request a jury-out hearing. The trial court, however, did make the finding that the couple's history was "very, very relevant" to these events and demonstrated the victim's "state of mind and her reasoning for being fearful." The trial court noted that the State was required to prove the elements of the offense, which in this case required the showing that a protective order was in place. The trial court relied upon *State v. Smith*, 868 S.W.2d 561, 574 (Tenn 1992), in finding that the evidence showed that the Defendant had an intent to harm the victim.

It is the defendant's burden to persuade this Court that plain error exists and that the error "was of sufficient magnitude that it probably changed the outcome of the trial." *State v. Hester*, 324 S.W.3d 788, 808 (Tenn. 2010). The instances raised by the Defendant relate to the victim's state of fear and the Defendant's hostility toward the victim. The State was required to show that the victim "reasonably fear[ed] imminent bodily injury." T.C.A. § 39-13-101. The evidence presented against the Defendant included his attempt to flee from police officers at the scene and the existence of an order of protection involving the Defendant and the victim. Based on all of the evidence presented, any error as to this evidence was not of a sufficient magnitude to probably change the outcome of the trial. The Defendant is not entitled to relief as to this issue.

### D. Denial of the Defendant's Request for a Mistrial

The Defendant argues that the trial court should have granted his request for a mistrial after permitting the State to elicit testimony about the defense theory in another case wherein the Defendant was convicted. The State responds that the Defendant "opened the door" to the admission of this testimony by raising the inference that the victim called the police because the Defendant was interfering with her drug use.

The purpose of a mistrial is to correct the damage done to the judicial process when some event has occurred which would preclude an impartial verdict. *See Arnold v. State*, 563 S.W.2d 792, 794 (Tenn. Crim. App. 1977). A mistrial is appropriate "when the trial cannot continue, or, if the trial does continue, a miscarriage of justice will occur." *State v. McPherson*, 882 S.W.2d 365, 370 (Tenn. Crim. App. 1994). The decision of whether to grant a mistrial is within the sound discretion of the trial court. *State v. McKinney*, 929 S.W.2d 404, 405 (Tenn. Crim. App. 1996). Normally, a mistrial should be declared only if there is a manifest necessity for such action. *Arnold v. State*, 563 S.W.2d 792, 794 (Tenn. Crim. App. 1977). One description of manifest necessity is that, "[i]f it appears that some matter has occurred which would prevent an impartial verdict from being reached," a mistrial must be declared. *Id*. Additionally, a manifest necessity exists when "no feasible alternative to halting the proceedings" exists. *State v. Knight*, 616 S.W.2d 593, 596 (Tenn. Crim. App. 1981). The burden of establishing a manifest necessity lies with the defendant. *State v. Seay*,

13

945 S.W.2d 755, 764 (Tenn. Crim. App. 1996). This Court will not disturb that decision unless there is an abuse of discretion. *State v. Adkins*, 786 S.W.2d 642, 644 (Tenn. 1990); *State v. Williams*, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996).

We conclude that the Defendant has failed to show that a manifest necessity existed requiring a mistrial in his case. During the Defendant's cross-examination of the victim, the victim was asked if she had ever told Mr. Bailey that she only called the police in an attempt to have the Defendant removed so she could continue to freely use drugs. In so doing, the Defendant raised a negative inference against the victim, and the State was allowed to correct this inference through the doctrine of curative admissibility. This doctrine provides that "'[w]here a defendant has injected an issue into the case, the State may be allowed to admit otherwise inadmissable evidence in order to explain or counteract a negative inference raised by the issue defendant injects.'" *State v. Land*, 34 S.W.3d 516, 527 (Tenn. Crim. App. 2000) (citing *State v. Armentrout*, 8 S.W.3d 99, 111 (Mo. 1999)). The Defendant cast doubt on the victim's motive in seeking police protection. The Defendant's history with the victim and his defense in a prior case that he was attempting to help her rather than harm her was an issue for a jury to consider. The Defendant is not entitled to relief as to this issue.

### E. Audio Recording of the Victim's Statement

The Defendant contends that the trial court's failure to require the State "to deliver the audio recording of the victim's statement to the trial court" constitutes plain error. The State responds that the Defendant has failed to show the breach of a clear and unequivocal rule of law, that one of his substantial rights was adversely affected, or that consideration of the error is necessary to do substantial justice.

After the completion of the State's direct examination of the victim at trial, the State informed the trial court that it did not have a statement "pertaining to the [victim's] testimony." The State explained that, after the victim failed to appear at the preliminary hearing, an investigator took a brief statement from the victim solely about her willingness to cooperate in the prosecution of the case.

Tennessee Rule of Criminal Procedure 26.2(a), commonly referred to as the *Jencks* Rule, provides:

> After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, shall order the attorney for the state or the defendant and the defendant's attorney to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter of the witness's

14

testimony.

A "statement" is defined as "[a] written statement that the witness makes and signs, or otherwise adopts or approves" or "[a] substantially verbatim, contemporaneously recorded recital of the witness's oral statement that is contained in a stenographic, mechanical, electrical, or other recording or a transcription of such a statement." Tenn. Rule Crim. P. 26.2(f)(1), (2).

The Defendant has submitted an audio recording of the interview for our review. Investigator John Paisley, assistant district attorney Paul Goodman, the victim, and her mother were present during the interview. On the audio recording, the victim stated her name. She acknowledged that she had failed to appear at a recent court date and explained that she was not in court due to a knee injury that impaired her ability to walk. She stated that she had doctor's "notes" indicating that she went to the emergency room and a medical clinic for treatment of this injury. When asked if she wanted to pursue prosecution of the cases against the Defendant, she answered in the affirmative. She stated that she was willing to cooperate in the prosecution but that she was afraid of the Defendant and "what he'll do."

The audio recording does not contain material that relates to her substantive testimony about the events at issue. The statement is a confirmation of the victim's willingness to be involved in the prosecution. The statement is not *Jencks* material. The Defendant has failed to show that an unequivocal rule of law was breached, therefore, he is not entitled to relief.

### F. Jury Instructions

The Defendant contends that the trial court erred when it instructed the jury on flight because he was also charged with evading arrest. The Defendant asserts that the jury was more likely to convict him of evading arrest after it heard the flight instruction. The State responds that a flight instruction was appropriate because flight may be considered as circumstantial evidence of guilt.

A trial court has the duty to fully instruct the jury on the general principles of law relevant to the issues raised by the evidence. *See State v. Burns*, 6 S.W.3d 453, 464 (Tenn. 1999); *State v. Harbison*, 704 S.W.2d 314, 319 (Tenn. 1986); *State v. Elder*, 982 S.W.2d 871, 876 (Tenn. Crim. App. 1998). Nothing short of a "'clear and distinct exposition of the law'" satisfies a defendant's constitutional right to trial by jury. *State v. Phipps*, 883 S.W.2d 138, 150 (Tenn. Crim. App. 1994) (quoting *State v. McAfee*, 737 S.W.2d 304 (Tenn. Crim. App. 1987)). In other words, the trial court must instruct the jury on those principles closely and openly connected with the facts before the court, which are necessary for the jury's understanding of the case. *Elder*, 982 S.W.2d at 876. Because questions regarding the

15

propriety of jury instructions are mixed questions of law and fact, our standard of review here is *de novo*, with no presumption of correctness. *State v. Rush*, 50 S.W.3d 424, 427 (Tenn. 2001); *State v. Smiley*, 38 S.W.3d 521, 524 (Tenn. 2001).

"A defendant has a constitutional right to a correct and complete charge of the law." *State v. Teel*, 793 S.W.2d 236, 249 (Tenn. 1990), *superceded by statute on other grounds as stated in State v. Reid*, 91 S.W.3d 247 (Tenn. 2002). When reviewing jury instructions on appeal to determine whether they are erroneous, this Court must "review the charge in its entirety and read it as a whole." *State v. Hodges*, 944 S.W.2d 346, 352 (Tenn. 1997) (citing *State v. Stephenson*, 878 S.W.2d 530, 555 (Tenn. 1994)). The Tennessee Supreme Court, relying on the words of the United States Supreme Court, has noted that:

> [J]urors do not sit in solitary isolation booths parsing instructions for subtle shades of meaning in the same way that lawyers might. Differences among them in interpretation of instructions may be thrashed out in the deliberative process, with commonsense understanding of the instructions in the light of all that has taken place at the trial likely to prevail over technical hairsplitting.

*Id*. (quoting *Boyde v. California*, 494 U.S. 370, 380-81 (1990)). A jury instruction is considered "prejudicially erroneous," only "if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." *Id*. Even if a trial court errs when instructing the jury, such instructional error may be found harmless. *State v. Williams*, 977 S.W.2d 101, 104 (Tenn. 1998).

In a jury-out hearing, the trial court denied the Defendant's request to leave out the flight instruction, finding that flight shows guilty knowledge of the charge for which the police were initially called. The trial court instructed the jury on flight as follows:

> If flight is proved, the fact of flight alone does not allow you to find that the defendant is guilty of the crime charged; however, since flight by a defendant may be caused by a consciousness of guilt, you may consider the fact of flight, if flight is so proven, together with all the other evidence when you decide the guilt or innocence of the defendant.
>
> On the other hand, an entirely innocent person may take flight; and such flight may be explained by the proof offered by the facts and circumstances of the case.

We conclude that there was sufficient evidence presented at trial to support a jury instruction on flight. The Defendant, under an order of protection, was found in close

16

proximity to the house from where the victim called police seeking protection from the Defendant. Upon seeing the police, the Defendant ignored police commands to stop, fled through the neighboring backyards and brush, broke through a police perimeter, and was ultimately wrestled to the ground by a police officer. These facts support an inference that the Defendant fled the crime scene to avoid prosecution.

Although the instruction should have been confined to the aggravated assault charge, we conclude that no reversible error resulted. *See State v. Christopher Lamont Kelso*, No. E1000-01602-CCA-R3-CD, 2001 WL 681313, at *4-5 (Tenn. Crim. App., at Knoxville, June 18, 2001), *no perm. app. filed*. We also note that the instructions were not given contemporaneously with the evading arrest instruction as was considered in *State v. Scotty Dale Staggs*, No. M2011-01675-CCA-R3-CD, 2013 WL 2722286, at *19 (Tenn. Crim. App., at Nashville, June 12, 2013). The *Staggs* Court noted that the flight instructions were "far removed" from the instructions on the charged offenses, ultimately concluding that the flight instruction was proper in that case. *Id.*

Accordingly, we conclude that the evidence fairly supported a flight instruction and although the instruction should have been limited to the aggravated assault charge, the error was harmless. The Defendant is not entitled to relief on this issue.

### G. Admission of the Defendant's Prior Convictions

The Defendant asserts that the trial court erred when it determined that his prior convictions for rape, attempted rape, and aggravated burglary could be used for impeachment purposes should he choose to testify. The State responds that these convictions were probative of the Defendant's credibility and not similar to the offenses for which he was on trial; therefore, the trial court correctly determined that the Defendant could be questioned about these prior convictions. We agree with the State.

Rule 609 of the Tennessee Rules of Evidence permits the State to attack the credibility of a criminal defendant by presenting evidence of prior convictions if four conditions are satisfied. *See* Tenn. R. Evid. 609. First, the prior conviction must be punishable by death or imprisonment over one year or must have involved a crime of dishonesty or false statement. *See* Tenn. R. Evid. 609(a)(2). In addition, less than ten years must have elapsed between the defendant's release from confinement for the prior conviction and the commencement of the subject prosecution. *See* Tenn. R. Evid. 609(b). The State must give reasonable pre-trial written notice of the impeaching conviction, and, finally, the trial court must find that the impeaching conviction's probative value on the issue of credibility outweighs its unfair prejudicial effect on the substantive issues. *See* Tenn. R. Evid. 609(a)(3).

17

This Court reviews the trial court's ruling on the admissibility of prior convictions for impeachment purposes under an abuse of discretion standard. *See State v. Mixon*, 983 S.W.2d 661, 675 (Tenn. 1999); *State v. Blanton*, 926 S.W.2d 953, 960 (Tenn. Crim. App. 1996). A trial court abuses its discretion only when it "'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999) (quoting *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997)). If a trial court fails to comply with the procedural requirements of Rule 609, then the trial court's decision is not entitled to deference. *State v. Lankford*, 298 S.W.3d 176, 182 (Tenn. Crim. App. 2008).

Trial courts should engage in a two-prong analysis when determining if the probative value of the impeaching conviction is outweighed by its prejudicial effect. *Id*. Trial courts are required to expressly (1) "analyze the relevance the impeaching conviction has to the issue of credibility," as well as (2) "assess the similarity between the crime on trial and the crime underlying the impeaching conviction." *Id*. (citations omitted). The mere fact that a prior conviction of the accused is identical or similar in nature to the offense for which the accused is being tried does not, as a matter of law, bar the use of the conviction to impeach the accused as a witness. *State v. Baker*, 956 S.W.2d 8, 15 (Tenn. Crim. App. 1997) (citations omitted). However, "[w]hen an impeaching conviction is substantially similar to the crime for which the defendant is being tried, there is a danger that jurors will erroneously utilize the impeaching conviction as propensity evidence of guilt and conclude that, since the defendant committed a similar offense, he or she is probably guilty of the offense charged." *Mixon*, 983 S.W.2d at 674 (citations omitted).

A trial court should first determine whether the impeaching conviction is relevant to the issue of credibility. *State v. Waller*, 118 S.W.3d 368, 371 (Tenn. 2003). Tennessee Rule of Evidence 609 suggests that the commission of any felony is "generally probative" of a defendant's credibility. *Id*. The Tennessee Supreme Court, however, has rejected a per se rule that permits impeachment by any and all felony convictions. *Mixon*, 983 S.W.2d 661 at 674. A prior felony conviction still must be analyzed to determine whether it is sufficiently probative of credibility to outweigh any unfair prejudicial effect it may have on the substantive issues of the case. *Waller*, 118 S.W.3d at 371. To determine how probative a felony conviction is to the issue of credibility, the trial court must assess whether the felony offense involves dishonesty or a false statement. *Id*.

The State timely filed a notice of its intent to impeach the Defendant at trial with the following offenses: a 1992 destruction of property conviction, a 2003 rape conviction; a 2002 attempted rape conviction, a 1998 escape conviction, a 2011 assault conviction, and a 2011 aggravated burglary conviction. After hearing the arguments of the parties on this issue, the trial court found that the three felony convictions for rape, attempted rape, and aggravated

burglary, had occurred within ten years and that the probative value of these convictions outweighed any unfair prejudicial effect on the substantive issues of the case.

The record demonstrates that the trial court followed the procedural requirements for considering the admissibility of impeachment evidence. The prior convictions were probative of credibility and not similar to the offenses for which the Defendant was on trial. As the State notes, this Court has already determined in another appeal by the Defendant that his convictions for rape and attempted rape were admissible for impeachment purposes. *State v. Michael Smith*, No. W2011-01630-CCA-R3-CD, 2013 WL 3702369 at *13 (Tenn. Crim. App, at Jackson, July 12, 2013), *no Tenn. R. App. P. 11 application filed.*

Accordingly, we conclude that the trial court did not abuse its discretion when it concluded that the Defendant could be questioned about his prior convictions for aggravated burglary, rape, and attempted rape had he testified at trial. The Defendant is not entitled to relief as to this issue.

## H. Sufficiency of the Evidence

The Defendant asserts that the evidence is insufficient to support his conviction for evading arrest because the record does not establish that the police officers had probable cause to pursue the Defendant. The State responds that the evidence sufficiently supports the jury's conviction of the Defendant. We agree with the State.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999) (citing *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990)). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review [for sufficiency of the evidence] 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011)

(quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this Court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999) (citing *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956)). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978), superseded by statute on other grounds as stated in *State v. Barone*, 852 S.W.2d 216, 218 (Tenn.1993)) (quotations omitted). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523, 527 (Tenn. 1963)). This Court must afford the State of Tennessee the "'strongest legitimate view of the evidence'" contained in the record, as well as "'all reasonable and legitimate inferences'" that may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000) (citations omitted).

In this case, the Defendant was convicted of the Class A misdemeanor offense of evading arrest. Tennessee Code Annotated § 39-16-603(a) provides the following:

> (a)(1) Except as provided in subsection (b), it is unlawful for any person to intentionally flee by any means of locomotion from anyone the person knows to be a law enforcement officer if the person:

> (A) Knows the officer is attempting to arrest the person; or

20

(B) Has been arrested.

(2) It is a defense to prosecution under this subsection (a) that the attempted arrest was unlawful.

(3) A violation of subsection (a) is a Class A misdemeanor.

Here, the Defendant challenges the lawfulness of his arrest rather than the sufficiency of the evidence for the evading arrest conviction. In effect, he does not dispute that the evidence was sufficient to support his conviction for evading arrest. Instead, he claims that his arrest was unlawful because no proof was presented that the complainant gave the officers a description of the suspect. The State argues that the Defendant has waived this argument for failure to file a pretrial motion on this issue and asserts that the evidence showed that the Defendant ignored repeated commands by law enforcement while leading multiple officers on a foot chase lasting several minutes. While we agree with the Defendant that Tennessee Code Annotated section 39-16-603(b)(2) provides a statutory defense to prosecution for evading arrest where the attempted arrest was unlawful, we conclude that he has failed to properly raise the defense.

The Fourth Amendment to the United States Constitution establishes "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause. . . ." Article I, section 7 of the Tennessee Constitution similarly provides that "the people shall be secure in their persons . . . from unreasonable searches and seizures . . . ." An arrest is therefore unlawful when an officer does not have "probable cause to believe the person to be arrested has committed [a] crime," *State v. Lewis*, 36 S.W.3d 88, 98 (Tenn. Crim. App. 2000), or when the officer does not have reasonable suspicion, supported by specific and articulable facts, to believe that a crime has been or is about to be committed. *Terry v. Ohio*, 392 U.S. 1, 21 (1968); *State v. Binette*, 33 S.W.3d 215, 218 (Tenn. 2000). "Probable cause-the higher standard necessary to make a full-scale arrest-means more than bare suspicion: [It] exists where the facts and circumstances within . . . [the officers'] knowledge, and of which they had reasonably trustworthy information, [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *State v. Day*, 263 S.W.3d 891, 902 (Tenn. 2008) (citing *Brinegar v. United States*, 338 U.S. 160, 175–76 (1949)) (internal quotations omitted). "This determination depends upon 'whether at that moment the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.'" *Id.* (quoting *Goines v. State*, 572 S.W.2d 644, 647 (Tenn. 1978) and quoting *Beck v. Ohio*, 379 U.S. 89,

91 (1964)).

Reasonable suspicion, however, is a less demanding standard than probable cause. *State v. Bridges*, 963 S.W.2d 487, 492 (Tenn. 1997). Reasonable suspicion for an investigatory stop will be found to exist only when the events which preceded the stop would cause an objectively reasonable police officer to suspect criminal activity on the part of the individual stopped. *State v. Levitt*, 73 S.W.3d 159, 172 (Tenn. Crim. App. 2001); *State v. Norword*, 938 S.W.2d 23, 25 (Tenn. Crim. App. 1996). The likelihood of criminal activity required for reasonable suspicion is not as great as that required for probable cause, and is "considerably less" than would be needed to satisfy a preponderance of the evidence standard. *United States v. Sokolow*, 490 U.S. 1, 7 (1989); *see also State v. Keith*, 978 S.W.2d 861, 867 (Tenn. 1998).

Unlike a constitutional challenge to an arrest, when a defendant relies upon Tennessee Code Annotated section 39-16-603(a)(2) as a defense to evading arrest, it must be fairly raised by the proof at trial and submitted to the jury for its determination. T.C.A. § 39-11-203(a)-(d); *see also State v. Reginald D. Hughes*, No. M2003-00543-CCA-R3-CD, 2003 WL 22748463, at *3 (Tenn. Crim. App., at Nashville, Nov. 21, 2003), *no perm. app. filed*; *State v. Troy Robert Whipple*, No. M2004-03047-CCA-R3-CD, 2006 WL 521425, at *6-7 (Tenn. Crim. App., at Nashville, March 3, 2006), *no perm. app. filed*.

Generally, challenges to the constitutional validity of a stop, based upon a lack of probable cause or reasonable suspicion, are made prior to trial by a motion to suppress. Tenn. R. Crim. P. 12(b)(2). There was no such motion filed in this case. Therefore, the Defendant relies solely upon the defense provided by section 39-16-603(a)(2). As previously stated, however, in order to raise this statutory defense, the lawfulness of the arrest must be challenged in the trial court, fairly raised by the proof at trial, and submitted to the jury for its determination. *See* Tenn. R. App. P. 36(a); T.C.A. § 39-11-203(a)-(d). Here, the Defendant made no challenge to the lawfulness of his arrest in the trial court. The evidence at trial showed that the Defendant ignored repeated commands by law enforcement, leading officers on a foot chase, and then physically resisted being taken into custody. This evidence did not address the lawfulness of his arrest. The record further shows that the jury was not instructed on this issue. Accordingly, we conclude that the Defendant did not sufficiently raise section 39-16-603(a)(2) as a defense because there was no proof at trial challenging the lawfulness of the arrest, and this issue was not presented to the jury.

Despite the Defendant's failure to properly raise the statutory defense provided by section 39-602(a)(2), our review of the record shows that the officers were responding to a dispatch report of domestic violence at a specific location. Upon arrival they encountered the Defendant running away from police through brush to the rear of residential homes. The

Defendant refused to follow police commands and continued to resist even after being physically detained. After his apprehension, the Defendant was transported to a hospital for treatment of the injuries sustained during his flight. At the very least, the officers in this case had reasonable suspicion to conduct an investigatory stop. However, in our view, the above facts also established probable cause to arrest the Defendant. We conclude that the Defendant's arrest was lawful and there was sufficient evidence upon which a jury could find the Defendant guilty beyond a reasonable doubt of evading arrest. The Defendant is not entitled to relief as to this issue.

### I. Defendant's Request to Sit at Counsel's Table

The Defendant challenges Rule 8.05 of the Rules of Practice and Procedure for Shelby County Criminal Court. The Rule states "[w]here space is available and with permission of the Court, the defendant may sit at counsel table with his or her attorney." The Defendant requested permission to sit next to his attorney at trial. The trial court denied his request and the Defendant sat behind his attorney throughout the duration of the trial. The State responds that this issue was not raised in the Defendant's motion for new trial and should be considered, if at all, under plain error review. The State acknowledges that the Defendant raised this issue in a pro se motion for new trial but maintains that, because the Defendant was represented by an attorney at the time, the pro se motion is null. The State contends that, under plain error review, the Defendant has failed to show the breach of a clear and unequivocal rule of law, that one of his substantial rights was adversely affected, or that consideration is necessary to do substantial justice.

This issue was raised only in the Defendant's pro se motion for new trial as pointed out by the State. We note, however, that the trial court addressed this issue during the hearing on the motion for new trial. As such, we address this issue on its merits.

In *State v. Rice,* our Supreme Court addressed the issue of whether the trial court's discretion in where a Defendant sits at trial as provided in Local Rule 8.05 violated due process. 184 S.W.3d 646 (Tenn. 2006). In denying relief, the *Rice* Court explained as follows:

> "In general, the course and conduct of trial proceedings rests within the sound discretion of the trial court." *State v. King*, 40 S.W.3d 442, 449 (Tenn. 2001) (*citing State v. Cazes*, 875 S.W.2d 253, 260 (Tenn. 1994)). Other jurisdictions have likewise held that whether the defendant should be permitted to sit at the defense counsel table is within the sound discretion of the trial court. *See, e.g., Webster v. State*, 680 S.W.2d 906, 908 (1984); *Commonwealth v. Moore*, 393 N.E.2d 904, 907 (1979); *State v. Johnson*, 462

P.2d 933, 935 (1969); *Hopkinson v. State*, 679 P.2d 1008, 1028 (Wyo.1984). Moreover, other jurisdictions require that a defendant must show some prejudice as a result of being seated behind counsel or he has no ground for complaint. *See Webster*, 680 S.W.2d at 908.

The highest court in Massachusetts has held that the seating of a defendant elsewhere than at counsel table does not "dilute the presumption of innocence." *Commonwealth v. Lockley*, 408 N.E.2d 834, 840 (1980) (citation omitted). Likewise, the First Circuit distinguished placing a defendant in the front row of seats from ordering the defendant to sit in the "dock," which is a four-foot high box in which the defendant is isolated. The court stated that "the defendants sat in the front row of the spectator's area of the courtroom, hardly a place calculated to strip an accused of his presumption of innocence in the eyes of the jury." *United States v. Turkette*, 656 F.2d 5, 10 (1st Cir.1981). Similarly, in *State v. Johnson*, the Supreme Court of Washington held that the seating arrangement whereby the defendant and his counsel sat at the counsel table farthest from the jury box during voir dire did not prejudice the defendant and was not an abuse of the trial court's discretion. 462 P.2d at 935.

Requiring the defendant to sit directly behind his attorneys is not the same as making the defendant wear prison attire or shackles in the courtroom, which would suggest to the jury that he is a danger. While it is the better practice to allow a defendant to sit at counsel table, we conclude that the trial court did not abuse its discretion in this case by ordering the defendant to sit in the first row behind defense counsel's table. The seating arrangement did not impair the defendant's presumption of innocence. Nor did the court's order impact the defendant's ability to communicate with counsel. The defendant was seated on a bench less than two feet behind counsel table, and the court assured counsel that he could sit next to the defendant on the bench if he needed to talk to him. Furthermore, the defendant has failed to show how he was prejudiced by the seating arrangement, and a showing of prejudice is necessary in order to obtain relief.

*Rice*, 184 S.W.3d at 674.

We similarly conclude that the trial court did not abuse its discretion when it required the Defendant to sit behind his attorney. The Defendant contends that the seating arrangement "impinge[d]" on his "ability to communicate with the attorney" because he had to "tap on" his attorney's shoulder to get his attention before speaking with him. The

24

Defendant argues that, had he been able to sit next to his attorney, he would have been in a better position to instruct his attorney on when to make objections. By his own admission the Defendant was still able to communicate with his attorney even though seated behind rather than next to his attorney. Furthermore, the Defendant fails to specify which objections his attorney failed to make due to the seating arrangement and how it prejudiced him.

Accordingly, we conclude that the trial court did not abuse its discretion when it did not allow the Defendant to sit at counsel table during the trial. The Defendant is not entitled to relief as to this issue.

## J. Consecutive Sentencing

The Defendant argues that the trial court erred in finding him to be a "dangerous offender" for purposes of ordering consecutive sentencing.

The Tennessee Criminal Sentencing Reform Act of 1989 and its amendments describe the process for determining the appropriate length of a defendant's sentence. Under the Act, a trial court may impose a sentence within the applicable range as long as the imposed sentence is consistent with the Act's purposes and principles. T.C.A. § 40-35-210(c)(2), (d) (2010); *see State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008).

In *State v. Bise*, the Tennessee Supreme Court announced that "sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" 380 S.W.3d 682, 708 (Tenn. 2012). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)). To find an abuse of discretion, the record must be void of any substantial evidence that would support the trial court's decision. *Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001); *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). The reviewing court should uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise,* 380 S.W.3d at 709-10. In other words, so long as the trial court sentences a defendant within the appropriate range and properly applies the purposes and principles of the Sentencing Act, its decision will be granted a presumption of reasonableness. *Id.* at 707. We likewise review a trial court's decision to impose consecutive sentences for an abuse of discretion with a presumption of reasonableness. *State v. James Allen Pollard*, – S.W.3rd –, No. M2011-0032-SC-R11-CD (Tenn. Dec. 20, 2013).

Tennessee Code Annotated section 40-35-115(b) provides that a trial court may order sentences to be served consecutively if it finds any one of the statutory criteria by a preponderance of the evidence. As it relates to this case, the trial court found the following criteria applicable:

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

T.C.A. § 40-35-115(b)(4). These criteria are stated in the alternative; therefore, only one need exist to support the imposition of consecutive sentencing. *See id.*; *State v. Denise Dianne Brannigan*, No. E2011-00098-CCA-R3-CD, 2012 WL 2131111, at *19 (Tenn. Crim. App., at Knoxville, June 13, 2012), *no Tenn. R. App. P. 11 application filed*. The imposition of consecutive sentencing, however, is subject to the general sentencing principles that the overall sentence imposed "should be no greater than that deserved for the offense committed" and that it "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed [.]" T.C.A. § 40-35-103(2), (4).

The trial court stated that, in considering the Defendant's "whole life" and the circumstances surrounding the commission of the current offense, consecutive sentencing was applicable due to its finding that the Defendant was a dangerous offender. The trial court considered the Defendant's "record and [the] sheer volume of things that he's done and violent things that he's done and controlling things that he's done to this particular victim and how frightened she was of him." The trial court stated that the Defendant's history indicated that "as soon as he's released he's going to hunt down this victim and she's in grave danger." The trial court found that the aggregate length of eleven months, twenty-nine days consecutive to a ten-year sentence was "reasonably relate[d] to the offense for which the [D]efendant stands convicted."

Our review of the record reflects that the trial court did not err when it ordered consecutive sentencing. The trial court classified the Defendant as a dangerous offender in imposing consecutive sentencing and properly considered the requisite *Wilkerson* factors in doing so. *State v. Wilkerson*, 905 S.W.2d 933 (Tenn. 1995). In *State v. Wilkerson*, 905 S.W.2d 933 (Tenn.1995), our Supreme Court set forth additional requirements for consecutive sentences when the defendant is a "dangerous offender." Accordingly, in order to base consecutive sentencing on the dangerous offender category, the trial court must find: (1) that the term imposed is "necessary in order to protect the public from further criminal acts by the offender;" and (2) "that the terms imposed are reasonably related to the severity of the offenses committed." *Id.* at 938.

26

The Defendant's criminal history included convictions for destruction of property, rape, attempted rape, escape, assault, and aggravated burglary. The Defendant had previously been convicted of a crime against the victim and an order of protection was in effect at the time of the current offenses to protect the victim from the Defendant. The facts of his current conviction were that the Defendant engaged in a physical altercation with the victim in their residence before permitting her to bake a cake at her mother's home. The victim fled her mother's home and was hiding at a friend's home in Memphis. When the Defendant tracked her down at that residence, the victim called police and relocated to another home hoping the Defendant would not find her. The Defendant again followed the victim and was apprehended near that residence after leading more than six police officers on a ten-minute foot chase. The sentence is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles of the sentencing statute. The Defendant is not entitled to relief.

### III. Conclusion

Based on the record and aforementioned authorities, we affirm the judgments of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE